## Edgar Reading

*v.*

## William E. Traver *et al.*

Evidence—*weight of, depends on circumstances.* On a question of payment, the evidence of a party and the receipt of the other party may be overcome by the testimony of such other party and corroborating circumstances, as showing the receipt to have been given for checks previously made.

Appeal from the Superior Court of Cook county; the Hon. S. M. Moore, Judge, presiding.

Messrs. Springer & Scovil, for the appellant.

Messrs. Abbott & Oliver, for the appellees.

Mr. Justice Breese delivered the opinion of the Court:

This was a proceeding in the Superior Court of Cook county, instituted by William E. Traver and William Slemint, complainants, and against Edgar Reading, defendant, to enforce a mechanic's lien, which resulted in a decree as prayed, and from which the defendant appeals.

The principal point made by appellant is, that the decree is against the weight of the evidence.

We have carefully examined the testimony, and are of opinion the decree is sustained by the evidence. By the contract, appellees were to erect the buildings for the agreed sum of five thousand dollars, and appellant accepted them as completed. They also furnished extra labor and materials, and claimed to be due, as a balance, the sum of nine hundred and forty-five dollars and eighty-two cents.

The controversy grows out of a payment of seven hundred dollars made on April 7, 1874. Appellant claims he paid that sum in currency to appellees on that day, and for which he took their receipt. To this appellant testified, when examined as a witness in the cause, and produced the receipt,

signed by Traver and Slemint. The receipt produced in evidence bears date April 7, 1874, and at the end of it, after a dash (——), the words " in currency," are found.

On the 24th of March preceding, appellant gave his check to appellees, on the Third National Bank, for two hundred and fifty dollars, and on the 25th of the same month, another check on the same bank for four hundred and fifty dollars, the first check payable to Traver and Slemint " or bearer," the last, to same or order.

The claim by appellees is, that this receipt of April 7, 1874, was given to cover these two checks, and for no other or different purpose.

The payment, if made, was made to Traver, and he testifies, positively, the receipt was for the two checks—that he gave it some days after he got the checks, and got no money when he gave that receipt, and that it is the only seven hundred dollar receipt he ever gave. It seems that Traver attended to the money matters of the concern.

It is urged by appellant, that inasmuch as his testimony as to this payment is positive, and the receipt also, it should outweigh that of appellee Traver, which is not so positive. We fail to see wherein it is of a less positive character than appellant's; and a receipt, though positive on its face, is open to explanation. Traver swears, most distinctly, " he credited appellant with the seven hundred dollars and receipted for the seven hundred dollars, but it was two checks—that was the first money appellant paid him—the receipt is seven hundred dollars and the checks are seven hundred dollars, and that is my signature. I will swear that is the receipt for those two checks." After speaking of crediting Reading with seven hundred dollars, he is asked, is that the seven hundred dollars that the receipt is given for, and that those two checks are for? He answers, yes, sir, I think it is; and being asked, " don't you know it is?" he answers, "yes, sir; the only seven hundred dollar receipt I ever gave." Taking his entire testimony, it is of a character as positive as that of appellant.

But if the scales were at an equipoise in this respect, there are circumstances which compel them to settle down in favor of appellees, and that most decidedly. They are these:

In the first place, appellees were at the house of appellant about the time the buildings were finished, near August 1, 1874, for the purpose of a settlement, had by appointment. Appellees, then and there, produced their account book, and appellant his receipts and vouchers, and they were compared, appellant checking off the several amounts upon appellees' book. Appellant's vouchers corresponded with this book, with the exception of an item of six hundred dollars, about which we will hereafter remark. At this time the books of appellees showed these two checks, one of two hundred and fifty dollars, of March 24, and one of four hundred and fifty dollars, of March 25, to the credit of appellant, and it was not then claimed or pretended by appellant that he was entitled to an additional credit of seven hundred dollars, as of April 7, 1874. All the matters of interest existing between these parties were then fresh in their recollection, and it is incredible, if appellant was entitled to this additional credit, that he did not then mention it.

Appellant was a banker, and, from his own statement, a careful business man, who made it a point to take receipts at the time he paid money or gave a check. This record shows, that for nearly all the checks appellant gave these parties, he took an accompanying receipt, stating, in the body of the receipt, the payment was "in check," and so when currency was paid, in the body of the receipt it was so stated. Being so careful, but having forgotten or omitted to take receipts for the checks of the 24th and 25th March, what is more natural, when reminded of it a few days afterwards. on April 7, that he should ask for and obtain the receipt in question?

There is another circumstance to be considered. Appellant was a banker. He does not, in his testimony. say when he paid this seven hundred dollars. If it was paid at his bank, it is hardly to be believed he took it out of his pocket. nor is it reasonable he had an amount of money so large about his per-

son while at the bank or in his house. It is not usual for a banker to carry on his person so much money, or keep it in his house to pay out on demand. His practice is, almost universally, to deposit in bank, and check it out as needed. It is not believed one banker in a thousand keeps on his person or in his house so large a sum of money as seven hundred dollars.

There is another circumstance which aids in settling the balance in favor of appellees.

It will be remembered, when the parties were together for an examination of their accounts, preparatory to a settlement, the receipt of appellees was produced by appellant, dated May 11, 1874, for one thousand four hundred and ninety-nine dollars and seventy cents, six hundred dollars of which appellant claimed was for currency then paid to appellees. By the contract between these parties, appellees agreed to take of appellant, in part payment, a note on one M. F. Hale, for eight hundred and eighty-eight dollars, and a piano, valued at six hundred dollars

This same claim is made by appellant now, while the proof most incontestably shows that not one dollar of money was paid by appellant at the time the receipt was given, but that it was intended to cover the Hale note, with interest, and the piano. Here is shown a fraudulent attempt by appellant to obtain six hundred dollars to which he was not entitled, and never paid in money, by means of a receipt given some time after the transaction. This attempt must have weighed with the court trying this case as to the receipt for seven hundred dollars, and appellant swore equally strong as to this six hundred dollars being a cash or currency payment, as to this seven hundred dollar receipt. There is not the slightest doubt this receipt of April 7 was intended to cover the two checks of March 24 and March 25, and for no other purpose.

There is another circumstance. If appellant's claim was recognized, it would show a case where contractors have been paid twice as much as they had earned at the time of payment. No one can believe this. It is so out of the ordinary course

of like business, the most convincing testimony should be required to establish the fact.

As to the receipt closing with the words "in currency," to give it individuality, it is only necessary to say, in view of all the facts disclosed in the record, especially in regard to the piano, appellant would not scruple to put these words where they are found.

On a review of all the evidence, we have no doubt the judgment and decree of the Superior Court is correct, and it must be affirmed.

*Judgment affirmed.*